IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

COURTNEY R. LOGAN                                                           PETITIONER

v.                                                                 No. 4:13CV122-GHD-DAS

STATE OF MISSISSIPPI, ET AL.                                              RESPONDENTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Courtney R. Logan for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has moved [30] to dismiss the petition for failure to state a claim upon which relief could be granted – and for failure to exhaust State remedies. Logan has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the State's motion [30] to dismiss will be granted and the petition dismissed for failure to state a claim upon which relief could be granted.

### Facts and Procedural Posture

The petitioner, Courtney Logan, is in the custody of the Mississippi Department of Corrections and is currently housed at the Wilkinson County Correctional Facility in Woodville, Mississippi. On March 15, 2010, a Leflore County Grand Jury indicted Courtney Logan for one count of aiding the escape of a Mississippi Department of Corrections ("MDOC") inmate and one count of being a felon in possession of a deadly weapon. On the same date, the grand jury indicted Joseph L. Jackson and Courtney Logan on three counts of kidnapping. *Id.* On September 25, 2012, the prosecution moved to charge Logan as a habitual offender under Mississippi Code Annotated 99-19-83. On November 27, 2012, Courtney Logan was tried and convicted of all five charges. On November 28, 2012, he was sentenced as a habitual offender, under Miss. Code Ann. § 99-19-83, to serve life terms for each of his convictions without the

possibility of parole.[1] Logan appealed his convictions and sentences to the Mississippi Supreme Court, and the appeal is pending. (Miss. Sup. Ct. Case No. 2012-KA-01963-COA).

On July 10, 2013, Logan filed the instant federal petition [1] for a writ of *habeas corpus*. The court initially dismissed [7] the petition, *sua sponte*, for failure to exhaust state remedies. However, the court later rescinded [14] the dismissal. On October 3, 2014, the court directed the State to answer the petition. On November 5, 2014, the court granted [28] the petitioner's motion to amend his petition. ECF, Doc. 23. The State has now moved to dismiss the petition for failure to state a claim upon which relief could be granted.

### Logan's Claims

Logan sets forth the following grounds for relief in the instant petition:

**Ground One.** Due process violation, current custody is in violation of a treaty between t[w]o states. IAD violation, executive agreement violated.

**Ground Two.** Denial of access to courts. Due to Respondents breach of the executive agreement I've been turned over to non[-]parties of that agreement who claim to not be responsible for providing me access to Tennessee case law. I've had a new trial motion pending since February 28, 2011. It has been postponed due to my extradition, I currently have no attorney appointed from Tennessee and I'm being hindered from proceeding with said trial proceeding. Also my direct appeal. I was also without counsel at the time my involuntary transfer took place in the state of Tennessee.

---

[1] Miss. Code Ann. § 99-19-83, the more onerous of Mississippi's habitual offender statutes, states:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation or any other form of early release from actual physical custody within the Department of Corrections.

> **Ground Three.** Breach of Executive agreement. The state of Mississippi entered into an executive agreement with the state of Tennessee to have me extradited to Mississippi to be tried on an indictment. After trial of the prosecution I was to be returned to Tennessee but was turned over to MDOC and currently being denied certain constitutional rights that were preserved.
>
> **Ground Four.** Due process violation of procedural rights. I was failed to be advised of the procedural rights which govern the extradition.
>
> **Ground Five.** Petitioner asserts that extradition procedures used by respondents were un-lawful and lacked authentic documentation supporting petitioner[']s current confinement. Petitioner asserts that adoption of the Interstate Agreement on Detainers would rectify all concerns in reference to petitioners *habeas corpus* petition.

Logan seeks relief in the form of having the extradition executive agreement between Tennessee and Mississippi upheld such that he might take advantage of the procedural rights afforded him during extradition. He would also like a hearing to determine whether he was actually a fugitive at the time of his arrest, detention, and subsequent extradition. Further, during that process, he would like for Mississippi and Tennessee to follow the requirements of the Interstate Agreement on Detainers. In his response to the State's motion to dismiss, Logan complains he has been unable to pursue an appeal of his Tennessee conviction because of the actions of Mississippi Department of Corrections personnel. It appears that Logan's main objective is to be transported to Tennessee so that he may appeal his convictions there.

### Extradition Procedure When a State is Not a Signatory to the Interstate Agreement on Detainers

In Grounds One, Three, Four, and Five, Logan challenges various aspects of his extradition from Tennessee to Mississippi. In Grounds One and Five, Logan complains that Mississippi and Tennessee failed to follow the dictates of the Interstate Agreement on Detainers ("IAD"); however, Mississippi is not a signatory to the IAD. As such the provisions of the IAD have no application in

this case, and Grounds One and Five will be dismissed for failure to state a claim upon which relief could be granted.

When states not party to the IAD are involved in extradition, constitutional and statutory law control extradition procedure. The right of one state (the demanding state) to require the return of a fugitive from another state (the asylum state) has its origins in Article IV of the United States Constitution.

> A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime.

U.S. Const. art. IV, § 2, cl. 2. As the Constitution does not set forth a procedure for carrying out extradition, Congress did so through the Extradition Act, originally enacted in 1793, and substantially unchanged today:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

18 U.S.C. § 3182, *see* Extradition Act of 1793, 1 Stat. 302; 18 U.S.C. § 662 (1940 ed.); Rev. Stat. § 5278.

The state executive is the primary actor in extradition under § 3182; however, the courts have a limited role to play. Individuals, *prior to extradition*, have a federal right to challenge their

extradition by writ of *habeas corpus*. *Roberts v. Reilly*, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885). The scope of such a *habeas corpus* challenge is, however, quite narrow. Once the governor has granted extradition, a court considering a *habeas corpus* challenge may only decide: (a) whether the extradition documents, on their face, are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. *Michigan v. Doran*, 439 U.S. 282, 290, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978). The right to such a hearing is secured by the Constitution and laws of the United States, and failure to provide such a hearing, upon request, may give rise to a cause of action under 42 U.S.C. § 1983. *Crumley v. Snead*, 620 F.2d 481, 484 (5th Cir. 1980).

Logan argues in Grounds One, Three, Four, and Five that he is still illegally in Mississippi custody by virtue of a defective extradition procedure – and that he should be returned to Tennessee custody to pursue Tennessee appellate and post-conviction collateral relief. Though there appears to be a path for Logan to return to Tennessee to seek relief in his criminal case there, he may not do so in this court through a *habeas corpus* challenge to the extradition process. "Once a fugitive has been brought within custody of the demanding state, legality of extradition is no longer proper subject of any legal attack by him." *Siegel v. Edwards*, 566 F.2d 958 (5th Cir. 1978). This holding appears to foreclose any *habeas corpus* relief based upon a challenge to extradition. In a later ruling, the Fifth Circuit reiterated its holding in *Siegel* – and refused to recognize a § 1983 claim arising from alleged violations of the Extradition Clause and the federal enabling statute. *Nichols v. McKelvin*, 52 F. 3d 1067 (5th Cir. 1995) The court held:

> The plain language of the Extradition Clause reveals that its purpose is to enable the states to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. *Michigan v. Doran*, 439 U.S. 282, 287, 99 S.Ct. 530, 58

L.Ed.2d 521 (1978). Thus, we have held that the Extradition Clause confers no rights on the individual being sought. *Id.*

Though *Nichols* is an unpublished *per curiam* opinion, the court cannot simply ignore it, and *Siegel* has not been overruled. On the other hand, the Fifth Circuit has held that a prisoner possesses the right to challenge extradition in a pre-extradition *habeas corpus* proceeding *in the asylum state* (Tennessee, in the present case). *Crumley v. Snead*, 620 F.2d 481 (5th Cir. 1980), citing *Roberts v. Reilly*, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885).

The crux of the matter is the *timing* of the challenge. Under *Siegel*, a *habeas corpus* challenge to extradition is viable only *prior to* extradition. Once a fugitive has been transported to authorities in the demanding state, he may not seek *habeas corpus* relief based upon extradition. Under *Crumley*, however, even after extradition, he may have a viable cause of action under 42 U.S.C. § 1983 against officials in the *asylum* state if he was not afforded the opportunity to mount a *habeas corpus* challenge to extradition before transport to the demanding state.

It appears that *Nichols* and *Siegel* control decision in the present case. Logan's complaint is that the asylum state – Tennessee – should not have given him over to the demanding state – Mississippi – before he had the chance to challenge his extradition. Under *Nichols* and *Siegel* Logan's transfer to Mississippi extinguished any *habeas corpus* claims regarding the propriety of his extradition. The court has found no authority for Logan to seek redress, via § 1983 or a petition for a writ of *habeas corpus*, against authorities in the demanding state (Mississippi) in this situation. As such, all of Logan's *habeas corpus* claims challenging the propriety of his extradition from Tennessee to Mississippi will be dismissed for failure to state a claim upon which relief could be granted.

### Ground 2: Denial of Access to the Courts

In Ground 2 of the instant petition, Logan alleges that Mississippi Department of Corrections officials will not permit him to access Tennessee law so that he may pursue a direct appeal of his Tennessee conviction. Under 28 U.S.C. § 2254, Logan may challenge only the legality of his detention:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States.*

28 U.S.C. § 2254(a). (Emphasis added.) Logan's allegations in Ground 2 of the instant petition do not challenge the legality of his detention; they challenge, instead, the availability of various legal materials. As such, these allegations fail to state a claim upon which *habeas corpus* relief could be granted and must be dismissed. Logan may, however, pursue relief as to the claims in Ground 2 through a separate complaint under 42 U.S.C. § 1983 against the officials he believes are hindering his access to Tennessee courts.

### Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be dismissed for failure to state a claim upon which relief could be granted. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 10th day of February, 2015.

_____
SENIOR JUDGE